## ABBY READ *vs.* GEORGE B. EARLE & another.

A man and woman living in another state came into this commonwealth for the purpose of being married, and were married here; a few days afterwards, while they were living here at an inn, she wrote to a broker in that state, with whom before the marriage she had deposited property earned by her, to send her a sum of money by an expressman, which the broker did, with instructions to the expressman to deliver it to her upon her personal receipt; but the expressman delivered it to the husband, who absconded with it. *Held,* that under *St.* 1855, *c.* 304, she might maintain an action in her own name against the expressman for the money, if she had not authorized her husband to receive it, or held him out as her agent to collect money.

ACTION OF CONTRACT against expressmen between Boston and Providence, R. I., to recover $600 delivered to them at Providence to be forwarded to the plaintiff at Boston.

At the trial in the superior court of Suffolk, at March term 1857, before *Abbott,* J., it appeared that the plaintiff came to Boston with William H. Read on the 12th of August 1856, from Providence, where they had resided previously, but whether immediately before or not did not appear, and were married at Boston on that day; and that they came to Boston to be married in consequence of the objections of their relations, and lived here at an inn until the 30th of August; that the plaintiff before her marriage had bought with her own earnings some bank stock in Rhode Island, and transferred it to one Dike, a broker at Providence, to hold for her, but without any written evidence that he so held it; that after the marriage, the plaintiff being desirous of advancing money to assist her husband, if she could do so and still hold the property in which it should be invested, so that her husband's creditors could not take it, Dike agreed to lend her $600 upon security of the stock in his hands; that on the 29th of August she telegraphed to Dike to send the money to her by Earle's express the next day, and he did so in an envelope addressed thus: " Mrs. Abby Read, Boston. $600. Receipt enclosed to be signed and returned. To be called for at office;" that the package arrived in Boston on the same day, and was delivered by the defendants to the plaintiff's husband, who signed the receipt sent with it " William H. Read, for Abby

Read," immediately left the Commonwealth, and had not lived with or supported her since; and that an hour after Dike had sent the money he received a telegram from the plaintiff, telling him not to send it.

The plaintiff offered evidence tending to show that when Dike delivered this money to the defendants' clerk he directed him to be particular and deliver it only to Mrs. Read personally, and upon her signing the receipt herself; and that on the receipt being first returned to him by the defendants, he told them he was afraid there would be trouble.

The defendants contended " 1st., that under the circumstances proved, their contract was with Dike and not the plaintiff, and that she could not maintain the action; 2dly, that the plaintiff could not maintain this action as sole plaintiff; 3dly, that the money sued for was not separate estate of the plaintiff under the laws of Massachusetts, so that she could sue for it in her own name, and that her husband was authorized, under the circumstances of the case, to receive the package of money for his wife ; and that its delivery by the defendants to him, under the facts proved, would discharge them from any liability to the plaintiff."

The judge declined so to rule; but instructed the jury " that under the circumstances proved and admitted, the plaintiff was entitled to maintain the action in her name, and that if the money delivered by Dike to the defendants for the plaintiff was delivered on account of the plaintiff solely, and advanced on the security of stocks which he held in trust for her, and which she owned before her marriage, the money would be her separate property, to which the husband had no legal right, and that she could sue for it in her own name, without joining her husband; that if Dike, by direction of the plaintiff and solely for her use, advanced the money in question on the security of stocks which he held for her before her marriage, and delivered it to the defendants with particular and precise directions to them to deliver it to the plaintiff only and no one else, and upon her separate personal receipt; and if the defendants, after receiving such directions, delivered the

money to the plaintiff's husband on his signing the receipt for her, such delivery would not discharge them from liability to the plaintiff, unless they could satisfy the jury that the plaintiff had authorized her husband to receive it, or had so treated and dealt with him in reference to the management of her separate estate, as to hold him out to third persons as her agent in that behalf; but if, on the contrary, the package was only directed to the plaintiff generally, with no special instructions to deliver it to her alone and on her personal receipt, and the defendants had no notice that the money was the separate estate of the plaintiff or that her husband was not authorized to receive it, and he and the plaintiff were living together as man and wife, then the delivery to the husband would discharge the defendants' liability for the money to the plaintiff." The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*H. C. Hutchins*, for the defendants. The defendants were common carriers of this money, and were bound to carry it safely to Boston and deliver it to the plaintiff or her husband. *Russell* v. *Livingston*, 19 Barb. 351.

The plaintiff cannot maintain this action in her own name. She and her husband came into Massachusetts merely for the purpose of being married, and did not become citizens or residents of Massachusetts. The *St.* of 1855, *c.* 304, cannot apply to them, or to property in another state.

If this statute applies to these parties, the money sought to be recovered in this suit is not within it; for it was not owned by the plaintiff at the time of her marriage, nor the rents, issues or proceeds of property so owned; and it did not come to her by descent, devise, bequest or gift; but it was money borrowed after marriage; and the fact that Dike held the stock as collateral security did not change the mode of acquisition. The *St.* of 1855, being in derogation of the common law, is to be construed strictly. If the money was the plaintiff's property, she could not transfer it without the written consent of her husband. The relations of the plaintiff and her husband were those of husband and wife at common law; the money borrowed by

her became in law his property; and delivery to him was in legal effect delivery to her, no matter what instructions were given. This money having been obtained with his consent and knowledge, he became liable to Dike therefor.

Dike's instructions to the defendants' clerk were not the plaintiff's instructions, and she cannot avail herself of them. They were merely suggestions, and did not form any part of the contract. The defendants' contract was with Dike, and not with the plaintiff, and she cannot sue upon it.

*S. J. Thomas & E. M. Bigelow*, for the plaintiff.

METCALF, J. The money sued for was the sole and separate property of the plaintiff, and she may maintain an action for it, as if she were a *feme sole*. *St.* 1855, *c.* 304, §§ 1, 4. On this point, and on all other points in the case, the jury were correctly instructed, and their verdict must be taken to have affirmed all the facts necessary to charge the defendants, and to have negatived all facts which, if found, would have exonerated them.

*Exceptions overruled.*